# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 14-CR-138-LRR |
| vs. | | **ORDER** |
| JALEL AOSSEY; YAHYA NASSER AOSSEY; MIDAMAR CORPORATION; ISLAMIC SERVICES OF AMERICA; & ISA, INC., d/b/a Islamic Services of America, Inc., | | |
| Defendants. | | |

_____

*TABLE OF CONTENTS*

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   Establishment Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        3.   Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    B.   Free Exercise Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    C.   Secretary of Agriculture. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    D.   Notice of Violations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    E.   Loss of Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    F.   Vagueness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    G.   Surplusage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## I.  INTRODUCTION

The matters before the court are Defendants Islamic Services of America and ISA, Inc.'s "Motion to Dismiss Portions of Count 1 and Counts 5-92" (docket no. 56); Defendants Islamic Services of America and Midamar Corporation's "Joint Motion to Dismiss Portions of Count 1 and Counts 2-4" (docket no. 72); and Defendants Midamar Corporation, Jalel Aossey and Yahya Nasser Aossey's "Second Joint Motion to Dismiss" (docket no. 73) (collectively, "Motions").

## II.  RELEVANT PROCEDURAL HISTORY

On December 5, 2014, a grand jury returned a 92 count Indictment (docket no. 6) charging Defendants with: (1) conspiracy in violation of 18 U.S.C. § 371 (Count 1); (2) making false statements on export certificates in violation of 21 U.S.C. § 611 (Counts 2-4); (3) wire fraud in violation of 18 U.S.C. § 1343 (Counts 5-47); money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts 48-91); and money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count 92).  The wire fraud and money laundering counts contain forfeiture allegations.

On June 5, 2015, Defendants Islamic Services of America and ISA, Inc. filed the Motion to Dismiss Portions of Count 1 and Counts 5-92.  On June 8, 2015, Midamar Corporation and Jalel Aossey joined in the Motion to Dismiss Portions of Count 1 and Counts 5-92.  *See* Joinder in Motion (docket no. 60).  On June 23, 2015, Midamar Corporation and Yahya Aossey joined in the Motion to Dismiss Portions of Count 1 and Counts 5-92.  *See* Joinder in Motion (docket no. 68).  On June 30, 2015, Defendants Islamic Services of America and Midamar Corporation filed the Joint Motion to Dismiss Portions of Count 1 and Counts 2-4.  Also on June 30, 2015,  Defendants Midamar Corporation, Jalel Aossey and Yahya Aossey filed the Second Joint Motion to Dismiss. On July 1, 2015, Midamar Corporation and Yahya Aossey joined in the Joint Motion to Dismiss.  *See* Joinder in Motion (docket no. 76).  On July 20, 2015, Islamic Services of

2

America joined in the Second Joint Motion to Dismiss. *See* Joinder in Motion (docket no. 81). On July 20, 2015, the government filed a Resistance to the Joint Motion to Dismiss Portions of Count 1 and Counts 2-4 and Second Joint Motion to Dismiss (docket no. 83). On July 21, 2015, the government filed a Resistance to the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 85). On July 24, 2015, Midamar Corporation, Jalel Aossey and Yahya Aossey filed a Reply to the Second Joint Motion to Dismiss (docket no. 86). On July 27, 2015, Islamic Services of America filed Replies to the government's Resistances (docket nos. 88-89). On August 14, 2015, the court held a hearing on the Motions. *See* August 14, 2015 Minute Entry (docket no. 94). The Motions are fully submitted and ready for decision.

## III. ANALYSIS

As an initial matter, the overlap among the various defense counsel and Defendants has considerably muddied the record. However, it appears that all Defendants have joined all the Motions. The court will therefore consider all the Motions at once. Defendants seek to dismiss the Indictment because: (1) it violates the Establishment Clause of the First Amendment; (2) it violates the Free Exercise Clause of the First Amendment; (3) the Secretary of Agriculture has exclusive jurisdiction to enforce alleged violations of 21 U.S.C. §§ 610-611; (4) the government did not provide Defendants with the required notice of alleged violations; (5) it fails to allege a loss of property as required by the wire fraud statute; and (6) 21 U.S.C. § 607(e) is unconstitutionally vague. The Motions further request that the court strike portions of the Indictment as surplusage. The government resists all of Defendants' arguments.

With respect to arguments (1)-(4), Defendants contend that the Indictment must be dismissed for lack of jurisdiction pursuant to Federal Rule of Criminal Procedure

3

12(b)(2).[1] "The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231. 18 U.S.C. § 3231's broad jurisdictional grant refers to "the court's statutory or constitutional *power* to adjudicate the case." *United States v. White Horse*, 316 F.3d 769, 772 (8th Cir. 2003) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)) (internal quotation marks omitted). The district court's power to adjudicate the case is independent from the particular allegations supporting a charged offense within the Indictment. *Cotton*, 535 U.S. at 630-31 (stating that "a district court has jurisdiction of all crimes cognizable under the authority of the United States," and a defective indictment "does not affect the jurisdiction of the trial court"); *see also Camp v. United States*, 587 F.2d 397, 399 (8th Cir. 1978) (noting that jurisdictional questions revolve around the "type of case" only, and that while "it is conceivable" that the violation of a right could affect jurisdiction, the Supreme Court has upheld district court jurisdiction even where constitutional violations were proven) (citing *McMann v. Richardson*, 397 U.S. 742 (1970)).

Concerning arguments (5)-(6), Defendants contend that the Indictment must be dismissed for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

> An indictment adequately states an offense if: it contains all of
> the essential elements of the offense charged, fairly informs
> the defendant of the charges against which he must defend, and

---

[1]Defendants cite Rule 12(b)(3)(B) when discussing their jurisdictional grounds for dismissing the Indictment. Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 14. This discrepancy appears to arise from a recent amendment to Rule 12's structure. *Compare* Fed. R. Crim. P. 12(b)(3)(B) (2014) ("[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction.") *with* Fed. R. Crim. P. 12(b)(2) (2015) ("A motion that the court lacks jurisdiction may be made at any time while the case is pending."). Despite the updated structure, the rule cited by Defendants is substantively equivalent to the current version.

> alleges sufficient information to allow a defendant to plead a
> conviction or acquittal as a bar to a subsequent prosecution.
> An indictment will ordinarily be held sufficient unless it is so
> defective that it cannot be said, by any reasonable
> construction, to charge the offense for which the defendant
> was convicted.

*United States v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012) (quoting *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009)). To be sufficient, "[a]n indictment need not use the specific words of the statute, so long as by fair implication it alleges an offense recognized by law." *United States v. Villarreal*, 707 F.3d 942, 957 (8th Cir. 2013) (quoting *United States v. Pennington*, 168 F.3d 1060, 1065 (8th Cir. 1999)) (internal quotation marks omitted). "[F]ederal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'" *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quoting *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992)).

## A. Establishment Clause

### 1. Parties' arguments

Defendants argue that "the government's attempt to mandate truthful statements in foreign export documents regarding Halal slaughter is prohibited by the Establishment Clause." Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 24. The government argues that "[t]he mere fact [D]efendants' false and fraudulent statements, representations, documents, and certificates happen to concern, or even touch upon, religion or religious matters or beliefs does not" cause the Indictment to violate the Establishment Clause. Government Resistance (docket no. 85) at 28-29.

### 2. Applicable law

The First Amendment to the United States Constitution provides, in relevant part that: "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The parties agree that the test enunciated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971) applies to Establishment Clause claims. *But see Roark v. South Iron R-1 Sch.*

5

*Dist.*, 573 F.3d 556, 563 n.4 (8th Cir. 2009) ("The *Lemon* test may be better suited to cases challenging statutes and policies, rather than specific government actions."). The *Lemon* test states that a government action does not violate the Establishment Clause "so long as it: (1) has a secular legislative purpose, (2) neither advances nor inhibits religion in its principal or primary effect, and (3) does not foster an excessive government entanglement with religion." *United States v. Corum*, 362 F.3d 489, 495 (8th Cir. 2004) (citing *Lemon*, 403 U.S. at 612-13).

The Second Circuit Court of Appeals applied the *Lemon* test in two cases challenging the State of New York's kosher fraud statutes. In *Commack Self-Service Kosher Meats, Inc. v. Weiss*, 294 F.3d 415 (2d Cir. 2002) (hereinafter "*Commack I*"), the Second Circuit found that the kosher fraud statutes violated the Establishment Clause because they had a primary effect of advancing and inhibiting religion and created an excessive government entanglement with religion. *Commack I*, 294 F.3d at 425. The New York statutes "define[d] 'kosher' as 'prepared in accordance with orthodox Hebrew religious requirements,' mandate[d] adherence to those requirements, or [were] integral to the State's enforcement of such requirements." *Id.* at 423. The Second Circuit held that the statutes required the government to "interpret 'kosher' as synonymous with the views of one branch, those of Orthodox Judaism" and, as a result, "the State has effectively aligned itself with one side of an internal debate within Judaism." *Id.* at 426. The Second Circuit concluded that such statutes "excessively entangle the State of New York and religion, and therefore run afoul of the Establishment Clause." *Id.* at 429-30.

In *Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F.3d 194 (2d Cir. 2012) (hereinafter "*Commack II*"), the Second Circuit addressed a challenge to New York's revised statutes regulating meat labeling. The revised statutes require:

> (1) that any food establishment that sells or offers for sale food prepared on its premises or under its control that is represented as kosher post a kosher certification form on the premises; (2)

6

> that any individual packaging a product which is sold or
> offered for sale as "kosher" or "kosher for passover" label
> these products as such; (3) that any person selling both kosher
> and non-kosher products post a window sign indicating that
> both kosher and non-kosher products are sold there; and (4)
> that any individual certifying a food product as kosher file his
> or her identifying information with the Department of
> Agriculture, and if that individual is certifying
> non-prepackaged food as kosher, he or she must also file a
> statement of his or her qualifications for providing such
> certification.

*Commack II*, 680 F.3d at 203.  In *Commack II*, the Second Circuit held that the revised statutes did not excessively entangle the government with religion.  The revised statutory scheme did not violate the Establishment Clause because it "does not adopt an Orthodox standard of *kashrut*, nor does it regulate what foods are acceptably kosher or take a position on what it means for a product to be considered kosher."  *Id.* at 207.  The Second Circuit went on to explain:

> The law only requires that if a product is to be held out to the
> public as "kosher," the product must bear a label describing it
> as such, and information is to be provided to the purchaser as
> to the basis for that description.  The presence of the label
> does not affect the seller's assessment of the kosher nature of
> a product and is not what makes a product kosher or not
> kosher.  The label simply indicates to the consumers that the
> seller or producer, and its certifier, believe the food to be
> kosher under their own standards.
>
> . . .
>
> Thus, the Kosher Act does not entangle the State with religion
> because it does not require the State to enforce laws based on
> religious doctrine or to inquire into the religious content or
> religious nature of the products sold.

*Id*.  The Second Circuit explained that the statutes in *Commack II* differed from the statutes in *Commack I* because:

under the prior Act, the State required a seller to follow specific processes set forth in the Act that followed the Orthodox Jewish food preparation standards of "kosher" before a product could be marketed as kosher. The prior Act also gave the State the ability to delegate advisory power under the law to a board on the basis of religion—indeed, all six rabbis on the board were of the Orthodox Jewish faith. Neither situation is present here: the term "kosher" is not defined in the statute, no specific religious processes are detailed as required for kosher labeling, no particular religious viewpoint is referenced, and no particular religion or denomination is given preference.

*Id.* at 207-08 (internal citations omitted). Because of these differences, the statutes do not "foster an excessive government entanglement with religion." *Id.* at 209.

### 3. Application

Turning to the first *Lemon* factor, the court finds that the statutes under which Defendants are prosecuted clearly have a secular purpose. Defendants concede that the crimes charged have "a facially valid secular purpose" but argue that there is a "less restrictive means" available to achieve the same ends. Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 24. Defendants argue that "criminalizing false statements concerning the underlying slaughter[] is purely enforcement of religious beliefs that serves no valid secular purpose." *Id.* First, whether there is a less restrictive means is not relevant to the question of whether the government action has a secular purpose. In addition, the court disagrees with Defendants that criminalizing false statements is enforcement of religious beliefs that serves no secular purpose. Rather, the government's prosecution ensures that purchasers and consumers of meat products are protected, and it also protects the United States' reputation in the meat markets. These are purely secular purposes.

Next, the court finds that the instant prosecution neither advances nor inhibits religion in its principal or primary effect. Defendants assert that the instant prosecution

8

is similar to *Commack I* because it requires the government to determine religious standards. *Commack I* is inapposite. The government is not upholding or advocating for a particular religious interpretation. Rather, the government in this case merely seeks to enforce factually verifiable false representations.

Turning to the third *Lemon* factor, the court finds that the instant prosecution does not foster excessive government entanglement with religion. Defendants argue that the court would be required to determine and apply foreign Halal slaughter requirements if the prosecution is allowed to move forward because the government is seeking to enforce the religious requirements of foreign countries. *See* Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 25-30. However, neither the court nor the jury will be required to decide what Halal means. The government is not claiming merely that Defendants represented that they were selling Halal products that were not in fact Halal. Contrary to Defendants' assertion, neither the court nor the jury will be required to "determin[e] . . . whether religious slaughter requirements have been complied with." *Id.* at 28. Rather, the government is alleging that Defendants made specific, false representations, including: (1) Defendants did not use penetrative captive bolt stunning; (2) all of Defendants' beef products were hand-slaughtered; (3) a practicing Muslim recited a specific prayer while slaughtering; (4) Defendants did not sell leftover hindquarters from Kosher slaughters as Halal; (5) Defendants' meat products complied with the laws and requirements of Malaysia, Indonesia, Kuwait and the United Arab Emirates; and (6) the animals slaughtered were vegetarian fed. The government believes that Defendants made these allegedly false representations to convince their customers that their meat products were Halal. The jury will not be required to determine whether the meat products were in fact Halal, but only to determine whether Defendants made the specific, false representations. The characteristics of Halal meat are irrelevant. This case would be different if the government merely alleged that Defendants represented their meat

9

products as Halal, and the government believed the meat products were not Halal. However, the government alleges that Defendants did more than represent that their meat was Halal—the government alleges that they made express, false representations about the way Defendants' meat products were raised and slaughtered. "[T]he government, in its role as . . . enforcer, may interact with religious organizations." *Corum*, 362 F.3d at 496. As in *Commack II*, the government is not seeking to enforce a particular religious view. *See Commack II*, 680 F.3d at 207. The mere fact that the government interacts with religion does not thereby cause the government action to violate the Establishment Clause.

Defendants also claim "that the Establishment Clause precludes jurisdiction over Halal slaughter due to the potential political divisiveness of enforcing the religious slaughter rules of foreign countries." Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 28. The court takes no position as to whether this case may be politically divisive. However, even if the case were politically divisive, political divisiveness is not relevant to the Establishment Clause analysis. It is the court's role to adjudicate cases before it, politically divisive or not.

Because the Indictment has a secular purpose, neither advances nor inhibits religion in its principal or primary effect and does not foster an excessive government entanglement with religion, the court shall deny the Motions to the extent they argue that the instant prosecution violates the Establishment Clause.

### B. *Free Exercise Clause*

Defendants argue that the court must dismiss the Indictment because "compliance or non-compliance with religious beliefs is not within the jurisdiction of a civil court." Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 37. Defendants also appear to argue that the statements on Defendants' websites

are not relevant,[2] though the court is unclear how the statements' relevance is related to the Free Exercise Clause challenge.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Emp't Div. Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990), *superseded by statute*, Religious Freedom Restoration Act of 1993, 107 Stat. 1488, 42 U.S.C. § 2000bb et seq. "Thus, the First Amendment obviously excludes all governmental regulation of religious beliefs as such. The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Id.* (emphasis omitted) (internal citations omitted). "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Id.* at 879 (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in the judgment)).

Here, the government is not asking the court to decide whether Defendants complied with certain religious beliefs or whether Defendants' meat products were in fact Halal. Rather, the government contends that Defendants made specific, false representations. The Indictment does not "compel affirmation of religious belief, punish the expression of religious doctrines . . . , impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious

---

[2] To the extent Defendants argue that the website statements are not relevant and require striking from the Indictment, the court addresses the arguments more fully below.

authority or dogma." *Id.* at 877. Moreover, Defendants' reliance on *Wallace v. ConAgra Foods, Inc.*, 920 F. Supp. 2d 995 (D. Minn. 2013), *vacated*, 747 F.3d 1025 (8th Cir. 2014)*,* is inapposite. In *ConAgra*, Judge Frank held that the parties asked the court to determine whether a product is kosher, and such a determination would be "intrinsically religious in nature." *ConAgra*, 920 F. Supp. 2d at 998. However, as already stated, neither the court nor the jury will be required to determine whether Defendants actually acted in accordance with the Halal standards. Defendants made specific, factually verifiable statements that the government alleges were false.

In addition, the court finds that the statements on Defendants' websites are relevant to the crimes charged in the Indictment without violating the Free Exercise Clause. The statements on the website contain representations from Defendants about their meat production process. Such statements were capable of influencing potential customers of Defendants' meat products.

Accordingly, the court shall deny the Motions to the extent they argue that the instant prosecution violates the Free Exercise Clause.

## C. Secretary of Agriculture

Defendants argue that the Secretary of Agriculture has exclusive jurisdiction over meat misbranding allegations pursuant to 21 U.S.C. § 674.

United States district courts have jurisdiction over all federal criminal offenses. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). The Indictment charges Defendants with, among other things, conspiracy to violate 21 U.S.C. § 610 (selling misbranded meat). The Indictment also charges violations of 21 U.S.C. § 611 (false statement on export certificates). Jurisdiction of the district courts relative to 21 U.S.C. §§ 610 and 611 is addressed in part in 21 U.S.C. § 674. 21 U.S.C. § 674 provides:

12

> The United States district courts . . . are vested with
> jurisdiction specifically to enforce, and to prevent and restrain
> violations of, this chapter, and shall have jurisdiction in all
> other kinds of cases arising under this chapter, except as
> provided in section 607(e) of this title.

21 U.S.C. § 674. 21 U.S.C. § 607(e) is titled "Use withholding directive respecting false

or misleading marking, labeling, or container; modification of false or misleading matter;

hearing; withholding use pending proceedings; finality of Secretary's action; judicial

review; application of section 194 of Title 7." 21 U.S.C. § 607(e). This section continues

and states:

> If the Secretary has reason to believe that any marking or
> labeling or the size or form of any container in use or
> proposed for use with respect to any article subject to this
> subchapter is false or misleading in any particular, he may
> direct that such use be withheld unless the marking, labeling,
> or container is modified in such manner as he may prescribe
> so that it will not be false or misleading. If the person, firm,
> or corporation using or proposing to use the marking, labeling
> or container does not accept the determination of the
> Secretary, such person, firm, or corporation may request a
> hearing, but the use of the marking, labeling, or container
> shall, if the Secretary so directs, be withheld pending hearing
> and final determination by the Secretary. Any such
> determination by the Secretary shall be conclusive unless,
> within thirty days after receipt of notice of such final
> determination, the person, firm, or corporation adversely
> affected thereby appeals to the United States court of appeals
> for the circuit in which such person, firm, or corporation has
> its principal place of business or to the United States Court of
> Appeals for the District of Columbia Circuit. The provisions
> of section 194 of Title 7 shall be applicable to appeals taken
> under this section.

*Id.*

The court finds that 21 U.S.C. §§ 674 and 607(e) do not divest the court of

jurisdiction over alleged violations of 21 U.S.C. §§ 610-611. Significantly, Defendants

13

cite to no authority for the proposition that 21 U.S.C. §§ 674 and 607(e) divest the court of jurisdiction. Defendants instead rely on several cases of only marginal relevance in support of their argument.[3] And, as the government points out, federal courts of appeals have consistently upheld criminal convictions under 21 U.S.C. § 610. *See, e.g.*, *United States v. LaGrou Distr. Sys., Inc.*, 466 F.3d 585, 592 (7th Cir. 2006); *United States v. Jorgensen*, 144 F.3d 550, 561 (8th Cir. 1998); *United States v. Agnew*, 931 F.2d 1397, 1411 (10th Cir. 1991).

Despite the history of federal courts of appeals upholding convictions and implicitly holding that United States district courts have subject matter jurisdiction over 21 U.S.C. § 610 offenses, the court shall nonetheless satisfy itself that it has jurisdiction. First, 21 U.S.C. § 674 is ambiguous in its reference to 21 U.S.C. § 607(e). Pursuant to 21 U.S.C. § 674:

> The United States district courts . . . are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this chapter, and shall have jurisdiction in all other kinds of cases arising under this chapter, except as provided in section 607(e) of this title.

21 U.S.C. § 674. The statute can be split up into two independent clauses. The first clause vests the United States district courts "with jurisdiction . . . to enforce, and to prevent violations of, this chapter." *Id.* The first clause appears to merely reiterate the district court's broad subject matter jurisdiction over federal criminal law violations contained in Chapter 12. At the very least, it does not contain a clear expression by Congress to prevent the Attorney General from prosecuting violators of the statute. The second clause vests the United States district courts with "jurisdiction in all other kinds of cases arising under this chapter." *Id.* The second clause thus vests United States district

---

[3] Defendants argue that the legislative history, the "hierarchical structure" of the statutes and the plain language show Congress's intent to divest the court of jurisdiction. The court agrees with the government that these arguments are without merit.

courts with jurisdiction over non-criminal, administrative cases under Chapter 12, except when § 607(e) applies. Section 607(e) applies only to the second clause because of the structure of the statute, along with the broad grant of jurisdiction to United States district courts to adjudicate violations of federal criminal law in 18 U.S.C. § 3231. That is, in non-criminal, administrative proceedings under Chapter 12, 21 U.S.C. § 607(e) limits a district court's jurisdiction. Federal district courts retain jurisdiction over all federal criminal law violations pursuant to 18 U.S.C. § 3231. Nothing contained in 21 U.S.C. § 674 divests the district court of its broad jurisdiction over federal criminal cases. As the instant case is a criminal prosecution, 21 U.S.C. § 607(e) does not apply.

In addition, 21 U.S.C. § 607(e) states that "[i]f the Secretary of Agriculture has reason to believe that any marking or labeling . . . is false or misleading . . . he *may* direct that such use be withheld . . . ." 21 U.S.C. § 607(e) (emphasis added). The use of the word "may" suggests that the Secretary of Agriculture is not required to prevent the labeler from labeling meat products a certain way, either by referring the matter to the Attorney General or through the administrative process. 21 U.S.C. § 607(e) appears to outline the civil process that the Secretary of Agriculture must follow in cases where he chooses to take action under the provision. This is in contrast to cases in which a labeler of meat products has the criminal scienter that the government must prove in criminal offenses pursuant to 21 U.S.C. §§ 610-611. In such cases, the government must prove the meat products are intentionally mislabeled. *See, e.g.*, *United States v. LaGrou Distrib. Sys., Inc.*, 466 F.3d 585, 591-92 (7th Cir. 2006) (stating that the government must prove a defendant knowingly violated 21 U.S.C. § 610 to support a conviction). In short, § 607(e) provides that the Secretary of Agriculture may direct a labeler to stop labeling a meat product in a certain way. If the labeler disagrees with the Secretary of Agriculture's determination, the labeler "may request a hearing, but the use of the . . . labeling . . . shall, if the Secretary so directs, be withheld pending hearing and final determination by

the Secretary." 21 U.S.C. § 607(e). After the hearing, if the Secretary of Agriculture determines that the label is misleading, "such determination . . . shall be conclusive unless . . . [the labeler] appeals to the United States court of appeals for the circuit in which [the labeler] has its principal place of business." *Id.* Nothing in § 607(e) can be fairly read to divest a United States district court of jurisdiction over alleged violations of 21 U.S.C. §§ 610-611. Indeed, to divest a United States district court of its general criminal jurisdiction "would require a clear and unambiguous expression of the legislative will." *United States v. Morgan*, 222 U.S. 274, 282 (1911). Accordingly, the court shall deny the Motion to the extent it argues that the court should dismiss the Indictment because Congress has expressly reserved jurisdiction over the alleged statutory violations to the Secretary of Agriculture.

### D. Notice of Violations

9 C.F.R. § 335.40 provides that, with certain exceptions:

> before any violation of the Federal Meat Inspection Act is reported to the Department of Justice by the Secretary for criminal prosecution the Secretary must give reasonable notice to the suspected violator that the Secretary intends to report the violation for prosecution and give the suspected violator an opportunity to present the violator's views to the Secretary with respect to such proceeding.

9 C.F.R. § 335.40(a). One such exception states that "[n]otice and opportunity need not be provided when the impending referral is part of an investigation involving non-Act violations, and the Act and non-Act violations are jointly referred for prosecution." 9 C.F.R. § 335.40(a)(5).

Defendants' argument that the court should dismiss the Indictment pursuant to this Regulation fails for several reasons. First, the Indictment alleges more than a violation of 21 U.S.C. § 610—it also alleges that Defendants committed wire fraud and money laundering offenses. Thus, the investigation in this case "involv[ed] non-Act violations,

16

and the Act and non-Act violations [were] jointly referred for prosecution." 9 C.F.R. § 335.40(a)(5). Consequently, even if 9 C.F.R. § 335.40 must be satisfied prior to instituting a criminal prosecution, the exception contained in § 335.40(a)(5) applies.

Moreover, 9 C.F.R. § 335.40 is strikingly similar to 21 U.S.C. § 335. 21 U.S.C. § 335 provides:

> Before any violation of this chapter is reported by the Secretary to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding.

21 U.S.C. § 335. *Compare* 9 C.F.R. § 335.40 ("[B]efore any violation of the Federal Meat Inspection Act is reported to the Department of Justice by the Secretary for criminal prosecution the Secretary must give reasonable notice to the suspected violator that the Secretary intends to report the violation for prosecution and give the suspected violator an opportunity to present the violator's views to the Secretary with respect to such proceeding."). In interpreting 21 U.S.C. § 335, the Supreme Court held that it:

> contains no expression indicating an intention to withdraw offenses under this act from the general powers of the grand jury, who are diligently to inquire and true presentment make of all matters called to their attention by the court, or that may come to their knowledge during the then present service.

> Repeals by implication are not favored, and there is certainly no presumption that a law passed in the interest of the public health was to hamper district attorneys, curtail the powers of grand juries, or make them, with evidence in hand, halt in their investigation and await the action of the Department. To graft such an exception upon the criminal law would require a clear and unambiguous expression of the legislative will.

*Morgan*, 222 U.S. at 281-82. The court sees no reason why this reasoning does not apply with as much force to 9 C.F.R. § 335.40. Defendant points to no "clear and unambiguous

17

expression of the legislative will," *id*. at 282, except that 9 C.F.R. § 335.40 exists. Accordingly, the court shall deny the Motions to the extent they argue that the government did not provide adequate notice.

### E. Loss of Property

Defendants argue that the Indictment fails to adequately allege wire fraud because "the government alleges that the United States was defrauded in the issuance of export certificates" and such "export certificates . . . cannot constitute property for the purpose of a mail or wire fraud." Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 38. The government argues that the court should deny the Motions because the Indictment sufficiently alleges the elements of wire fraud.

To state an offense for wire fraud, the government must show the following elements:

> *One*, the defendant voluntarily and intentionally participated in a scheme to defraud with knowledge of its fraudulent nature or devised or participated in a scheme to obtain money or property by means of material false representations or promises;
>
> *Two*, the defendant did so with the intent to defraud; and
>
> *Three*, the defendant used, or caused to be used, interstate wire communication . . . in furtherance of, or in an attempt to carry out some essential step in the scheme.

Eighth Circuit Model Criminal Jury Instruction 6.18.1343 (modified in part). Here, the government alleges that Defendants made false representations:

> 1) to give the false impression that the accompanying shipments of beef products complied with the import requirements of the countries to where the beef was being shipped; 2) to give the false appearance that all United States Department of Agriculture requirements had been satisfied; 3) to give the false appearance that certain beef slaughter practices and standards had been followed; and 4) *to result in the payment of money to the defendants* and others.

18

Indictment ¶ 57 (emphasis added). The Indictment further alleges that "for the purpose of executing or attempting to execute [a] scheme and artifice[] to defraud . . . the defendants and their authorized representatives knowingly caused, induced, procured, and aided and abetted the transmission, by means of wire communication in interstate and foreign commerce, of monetary payments to defendant MIDAMAR's bank account." *Id.* ¶ 72. These allegations "contain[] all of the essential elements of the offense[s] charged, fairly inform[] [Defendants] of the charges against which [they] must defend, and allege[] sufficient information to allow [Defendants] to plead a conviction or acquittal as a bar to a subsequent prosecution." *Beasley*, 688 F.3d at 532 (quoting *Hayes*, 574 F.3d at 472). Accordingly, the court shall deny the Motions.

Finally, the court finds unpersuasive Defendants' argument that the Indictment is deficient because "the government alleges that the United States was defrauded in the issuance of export certificates" and such export certificates "cannot constitute property for the purpose of a mail or wire fraud." Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 38. Defendants rely on *Cleveland v. United States*, 531 U.S. 12 (2000), in which the Court held that a state license to operate video poker machines did not constitute "property" pursuant to 18 U.S.C. § 1341. *Cleveland*, 531 U.S. at 15. The question in *Cleveland* was whether issuance of a license was "property." Here, by contrast, the government alleges that Defendants executed the scheme to defraud "to result in the payment of money to the defendants." Indictment ¶ 57. An intent to obtain money is explicitly contemplated by the statute. *See* 18 U.S.C. § 1343 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining *money* or property by means of false or fraudulent pretenses . . . transmits or causes to be transmitted by means of wire . . . communication . . . , shall be fined under this title or imprisoned not more than 20 years, or both." (emphasis added)). The government's theory is not that the government itself was defrauded; the government's

19

theory is that Defendants made false representations to potential customers with the intent to obtain money from such potential customers. Money is explicitly contemplated by the wire fraud statute. *Cleveland* is therefore inapposite, and the Indictment sufficiently alleges a violation of 18 U.S.C. § 1343.

Moreover, the government need not allege any actual harm stemming from the fraud. *See United States v. Louper-Morris*, 672 F.3d 539, 556 (8th Cir. 2012) ("[T]he United States is not required to show actual loss or harm to the victims of the fraud in order to prove wire fraud or mail fraud."). Rather, the government need only "show that the accused intended to defraud his victim and that his or her communications were reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* (quoting *United States v. Williams*, 527 F.3d 1235, 1245 (11th Cir. 2008)) (internal quotation marks omitted). The Indictment charges Defendants with falsely representing the qualities of meat sold to foreign customers by means of an interstate wire communication. This allegation is sufficient to charge Defendants with a violation of 18 U.S.C. § 1343.

Even if the court were to construe the Indictment as alleging that Defendants intended only to defraud the government—and not to defraud the foreign purchasers of the meat—the Indictment is still sufficient. It does not matter if "the entity deceived was not the ultimate victim of the scheme that was deprived of money or property." *United States v. Seidling*, 737 F.3d 1155, 1161 (7th Cir. 2013); *see also United States v. Blumeyer*, 114 F.3d 758, 767-68 (8th Cir. 1997) (holding that "a defendant may be convicted of . . . wire fraud for making false representations only to persons other than the intended victims"). That is, even if the government's theory is that Defendants made misrepresentations only to the government and did not intend to deprive the government of money or property, the Indictment is still sufficient. Accordingly, the court shall deny the Motions to the extent

20

they argue that the government has failed to adequately allege violations of the wire fraud statute.

## F. Vagueness

Defendants argue that the court should dismiss the Indictment because 21 U.S.C. § 607(e) "does not provide the ordinary person with notice that a misbranding violation based upon allegations of false or misleading labeling is punishable as a crime." Brief in Support of the Second Joint Motion to Dismiss (docket no. 73-1) at 34-35. Defendants rely heavily on the argument that § 607(e) exempts conduct from prosecution unless initiated by the Secretary of Agriculture. As discussed above, the Attorney General has the power to prosecute the crimes charged in the Indictment. In addition, *Johnson v. United States*, 135 S. Ct. 2551 (2015) does nothing to render the statutes in the Indictment unconstitutionally vague. *Johnson* merely applied familiar principles of vagueness to the Armed Career Criminal Act's residual clause. Defendants cite to no authority for the proposition that the statutes in the Indictment are unduly vague; indeed, the statutes at issue are easily understood. Accordingly, the court shall deny the Motions to the extent Defendants argue that 21 U.S.C. § 607(e) is unconstitutionally vague.

## G. Surplusage

In addition to arguing that the Indictment's inclusion of statements from their websites violates the Free Exercise Clause, noted above, Defendants also argue that their website statements are not relevant to several charges in the Indictment. This argument takes two forms. First, Defendants claim that the statements on their websites are irrelevant on the grounds that they "[c]annot [s]erve as a [b]asis" for violations of 18 U.S.C. § 1001, 21 U.S.C. §§ 610-611, or 18 U.S.C. §§ 1341 and 1343. Brief in Support of the Motion to Dismiss Portions of Count 1 and Counts 5-92 (docket no. 56-1) at 30-35. Second, Defendants claim that the statements on their websites are irrelevant because they are not part of the mislabeling alleged by the Indictment and that the statements should

therefore be stricken as surplusage.  Defendants Brief in Support of the Second Joint Motion to Dismiss (docket no. 73-1) at 35-39.

Federal Rule of Criminal Procedure 7 demands that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  Although a "concise . . . statement of the essential facts" is all that is required for an indictment, the inclusion of additional information will not invalidate the indictment.  Instead, the inclusion of additional information that is "unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment that may be ignored." *United States v. Miller*, 471 U.S. 130, 136 (1985) (internal quotation marks omitted).  Where the non-essential information constitutes "surplusage," however, the defendant may move to strike that information from the indictment.  Fed. R. Crim. P. 7(d).  Surplusage is comprised of allegations that are "not relevant to the charge made or contain inflammatory and prejudicial matter." *United States v. Figueroa*, 900 F.2d 1211, 1218 (8th Cir. 1990) (quoting *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)).  A statement is relevant if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401.  A "fact . . . of consequence" need not be an ultimate issue.  Fed. R. Evid. 401 advisory committee's note to 1972 proposed rule.  A statement is prejudicial if it risks "inducing decision on a purely emotional basis." Fed. R. Evid. 403 advisory committee's note to 1972 proposed rule.  "A motion to strike surplusage from an indictment . . . is a matter within the district court's discretion." *Figueroa*, 900 F.2d at 1218.

At the outset, insofar as Defendants argue that the irrelevance of the website statements demands dismissal of any charges, such argument fails.  Even if Defendants are correct in their assertion that the website statements "[c]annot [s]erve as a [b]asis" for the numerous violations they list—in other words, they are not essential to the charged

22

offenses—that fact would not result in the dismissal of the charges. Instead, the inclusion of the statements would be treated as mere "useless averment[s] that may be ignored." *Miller*, 471 U.S. at 136. Accordingly, Defendants' arguments about the relevance of the website statements are more appropriately addressed as a motion to strike surplusage.

In arguing that the website statements are surplusage, Defendants contend that they are irrelevant to the underlying bases of the charged offenses. This argument, however, takes too narrow a view of relevance. While the website statements certainly do not comprise the false documents supporting the alleged violation of 18 U.S.C. § 1001, nor do they comprise the improper labels supporting the alleged violation of 21 U.S.C. §§ 610-611, the fact that the statements are not determinative of an ultimate issue does not make them irrelevant. Furthermore, unlike the falsification of documents and mislabeling charges, the fraud charges brought under 18 U.S.C. §§ 1341 and 1343 do directly implicate the website statements for the determination of an ultimate issue. The Indictment can fairly be read to allege that the false statements from Defendants' websites comprise the "fraudulent pretenses and promises" made to obtain money from customers. *See* Indictment ¶ 71. The relevance of the website statements to the fraud charges cannot be reasonably questioned. Further, as the statements appear to be directly relevant to the fraud charges, they will not encourage a decision on a purely emotional basis and are therefore not inflammatory and prejudicial.

Accordingly, the court shall deny the Motions to the extent Defendants argue the statements made on their website are surplusage and require striking from the Indictment.

## IV. CONCLUSION

In light of the foregoing, Defendants Islamic Services of America and ISA, Inc.'s "Motion to Dismiss Portions of Count 1 and Counts 5-92" (docket no. 56); Defendants Islamic Services of America and Midamar Corporation's "Joint Motion to Dismiss Portions of Count 1 and Counts 2-4" (docket no. 72); and Defendants Midamar

23

Corporation, Jalel Aossey and Yahya Aossey's "Second Joint Motion to Dismiss" (docket no. 73) are **DENIED**.

      **IT IS SO ORDERED.**

      **DATED** this 25th day of August, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

24